# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   **v.**                              **Case No. 07-CR-198**

**COURTLAND LOVE**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Defendant Courtland Love pleaded guilty to possessing a firearm as a felon, 18 U.S.C. § 922(g)(1), and the probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing. The PSR set defendant's offense level at 17 (base level 20, U.S.S.G. § 2K2.1(a)(4)(A), and minus 3 for acceptance of responsibility, § 3E1.1) and his criminal history category at III, producing an imprisonment range of 30-37 months. Neither side objected to these calculations, which I found correct and accordingly adopted. I then considered the factors set forth in 18 U.S.C. § 3553(a) and imposed a sentence of 24 months, to run concurrently with the state sentence after revocation defendant was then serving. This memorandum provides written reasons for the sentence imposed. See 18 U.S.C. § 3553(c).

### I. SENTENCING FACTORS

Under § 3553(a), the sentencing court considers the following factors:

(1)      the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)      the need for the sentence imposed–

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the court must impose a sentence that is sufficient but not greater than necessary to satisfy the statutory purposes of sentencing, which are just punishment, deterrence, protection of the public and rehabilitation of the defendant. 18 U.S.C. § 3553(a)(2).  In making this determination, the district court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007), or place "any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007).  Rather, the court must make an independent determination of what sentence is sufficient but not greater than necessary, taking into account the relevant § 3553(a) factors and the positions of the parties. United States v. Wilms, 495 F.3d 277, 282 (6th Cir. 2007).

## II.  DISCUSSION

**A.      The Offense**

On May 28, 2007, the police stopped defendant's van for a traffic violation.  They

2

observed him lean toward the front passenger seat, as if handing something off. The officers then saw the passenger push a dark object off her seat and onto the floor. When they checked the floor officers found a handgun, a loaded semi-automatic pistol. Defendant had been convicted of a felony drug distribution offense just two weeks previously and thus could not lawfully possess a gun. Defendant stated that he had the gun because he had recently been robbed and felt threatened. However, he admitted that he did not go to the police about the robbery.

## B. The Defendant

Defendant was just twenty years old and his record consisted of the felony drug case he picked up just before this one, a previous misdemeanor drug possession case, and a disorderly conduct conviction for which he received a fine. A state court judge placed defendant on probation for the felony drug case, but defendant's probation was revoked based on this offense, and he was at the time I sentenced him serving a two year state prison term with a projected release date of May 23, 2009.

Defendant had a pretty rough childhood. His father was killed when he was nine, which required him to take responsibility for his younger siblings while his mother worked to support the family. Defendant's mother made positive comments about him, describing him as a "parent partner" after the death of her husband. Defendant's girlfriend also made positive statements, as did two school officials who provided letters to the court. For instance, defendant's former assistant principal spoke of defendant's "desire to be successful and rise above the challenges that faced him and his family." (R. 27 at 2.) A former school counselor described defendant as "a nice young man, very polite . . . and focused on his future." (R. 27 at 3.) At sentencing, the AUSA also spoke of defendant's potential, describing him as unique,

3

bright and cooperative. The AUSA believed that defendant appreciated the significant damage guns cause society and particularly the area of Milwaukee where defendant lived.

Defendant appeared to have no serious drug or alcohol abuse issues, and he graduated from high school and took some additional courses at MATC. Therefore, I saw no significant correctional treatment needs, aside perhaps from some additional vocational training. Other than part-time work in his grandmother's restaurant, defendant's employment record was limited to a single job he held for about seven months then lost due to absenteeism. See 18 U.S.C. § 3553(a)(2)(D).

**C.    The Sentence**

The advisory guidelines recommended 30-37 months in this case. See 18 U.S.C. § 3553(a)(4). My evaluation of the purposes of sentencing convinced me that a prison sentence, albeit one a bit below the range, was necessary to satisfy the purposes of sentencing. See 18 U.S.C. § 3553(a)(2) & (3). The offense was serious based on the type of weapon involved and the recency of defendant's felony conviction. The state court gave him a chance on probation, but he blew that right away.

Defendant noted that this was a pure status offense, as there was no evidence that he threatened anyone with the gun or intended any harm with it. That was true as a factual matter, but defendant's guideline range would likely have been higher had there been such evidence. See U.S.S.G. § 2K2.1(b)(6) (providing for a 4 level enhancement if the defendant possessed the weapon in connection with another felony offense); U.S.S.G. § 2K2.1(c) (providing for a cross-reference if the defendant used the firearm in connection with the commission of another offense). I did not see the absence of aggravating circumstances as mitigating this offense. I also accepted defendant's motive for getting the gun, but again I did

4

not really see this as a significant mitigating factor.  The appropriate response to being the victim of a robbery is to call the police, not to go armed in case of another confrontation. According to the PSR, the robbers were childhood friends of defendant, so he knew who they were and could identify them to the police.  I also noted that defendant was arrested driving around with the gun in his van at 4:00 a.m.  That is an unsatisfactory response to a robbery committed inside a home.

Defendant next noted that he spent 12 months in a local jail waiting for this case to resolve, which is harder time than prison.  But defendant really had only himself to blame for that, as he committed this crime while on probation.  His confinement in a local jail while this new matter was resolved was a natural consequence of his own conduct.  Defendant further noted that the person who robbed him was also confined in that jail, but he presented no evidence of any particular problems with this person.  Defendant also suggested that his criminal history category of III overstated his risk of recidivism, but given the fact that he committed this crime just two weeks after he was placed on probation for a felony drug offense, I could not agree with that.

Nevertheless, there were significant positives in this case, which merited sentencing consideration.  First, I took into account defendant's assistance to his family after his father's murder, which reflected some strength of character, as did the letters from his high school principal and counselor, and his mother.  These letters, along with the comments of the AUSA, suggested that defendant had significant potential.  But as I admonished defendant at sentencing, he had to start making better choices, make use of his education (which was more advanced than many defendants I see), and get a steady job in order to fulfill his potential.  See 18 U.S.C. § 3553(a)(1).

5

Second, I took into account the fact that defendant's prior record was not terribly serious. His felony drug distribution case, which produced a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4), was relatively minor, involving just 2 grams of cocaine. Defendant had no history of violence. Thus, I found that the guideline offense level overstated the risk he posed with a gun. See 18 U.S.C. § 3553(a)(2)(A) & (C).

Third, I considered the fact that defendant was compliant with the officers on his arrest and attempted to cooperate with the government thereafter. The government indicated that the cooperation ultimately did not pan out (through no fault of defendant). However, based on his efforts, the government recommended a low end guideline sentence running concurrently with defendant's state revocation sentence. Because I found the concurrent recommendation reasonable, I also took the timing of the prosecution into account. This case was originally charged in state court; a few months later the state prosecution was dismissed in favor of the federal indictment, and it took several months for the case to resolve in this court. Thus, despite the government's concurrent recommendation, because the federal sentence would not start until the date of its imposition and the state term would discharge about one year later, simply by the timing the instant sentence would be only partially concurrent. See generally United States v. Brannon, 377 F. Supp. 2d 667, 670-71 (E.D. Wis. 2005) (discussing the court's ability to adjust the instant sentence to make it fully concurrent with an undischarged state sentence); United States v. Jones, 233 F. Supp. 2d 1067, 1076 (E.D. Wis. 2002) (same).

Therefore, taking all of these factors into account, I found a sentence of 24 months sufficient but not greater than necessary. I based the sentence primarily on the timing of the prosecution and the slight overstatement in defendant's offense level based on the prior drug distribution case. This sentence resulted in a total period of confinement of about three years

6

on both cases and one year of additional punishment for this case alone, a period sufficient to provide just punishment given the seriousness of the offense and the recency of the felony conviction. <u>See</u> 18 U.S.C. § 3553(a)(2)(A). This sentence was also sufficient to deter defendant, as he had never been to prison before. <u>See</u> 18 U.S.C. § 3553(a)(2)(B). Generally, deterrence can be served by a lesser term when the defendant has not previously been imprisoned than in the case of a defendant who has already served time yet continues to re-offend. <u>See</u> <u>United States v. Qualls</u>, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005). This sentence was also sufficient to protect the public given defendant's relatively limited record and the absence of any violence in his history. <u>See</u> 18 U.S.C. § 3553(a)(2)(C).

The guidelines recommend a consecutive sentence when the defendant was on probation and has had such probation revoked, <u>see</u> U.S.S.G. § 5G1.3 cmt. n.3(C), but consistent with the joint recommendation of the parties I decided to run the instant sentence concurrently, primarily to account for defendant's efforts to cooperate. The revocation was based solely on the instant offense, and the Seventh Circuit has noted "that when the conduct underlying the revocation and the current sentence is the same, a concurrent sentence would be reasonable." <u>United States v. Huusko</u>, 275 F.3d 600, 603 (7th Cir. 2001). As noted, even running the sentence concurrently defendant would serve a significant incremental punishment, one sufficient to satisfy the purposes of sentencing. Because the sentence was just 2 levels below the guideline range and was based on the particular circumstances discussed herein, it created no unwarranted disparity. <u>See</u> 18 U.S.C. § 3553(a)(6).

### III. CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 24 months to run concurrently with his state revocation sentence. Upon completion of that sentence, I

7

ordered him to serve three years of supervised release, the conditions of which appear in the judgment.

Dated at Milwaukee, Wisconsin, this 14th day of May, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge